On behalf of the athlete, Ms. Victoria Josephson. The defendant was charged and convicted of domestic battery to his wife while previously being convicted of domestic battery. That made it a class 4 felony and he was sentenced to prison. The occurrence, the altercation with his wife occurred in a parking lot in Dixie, Illinois in Lee County. It was at 1.20 in the morning and there are a number of bars right nearby. The defendant and his wife had been drinking in one of the bars since about 8 o'clock in the evening. There was only one actual eyewitness to the actual, what they call domestic battery. And who testified for the state. There were other witnesses, but they didn't see actually what happened. The one eyewitness testified and the defendant did not testify, but it came out in the evidence that his story is that his wife fell down in the parking lot and that he did not hit her. The policeman who took the wife home after, while she was on the ground in the parking lot at 1.20 in the morning. I think we can kind of agree the evidence was closely balanced. My question from the get-go is why isn't this invited error? Well, part of it is, remember he was tried in a bench trial. There was nothing about his jail uniform, which was a black and white striped jail uniform. He's tried in his jail outfit, it's a bench trial. He is also, he was tried with leg shackles on and also his left arm was still shackled. And of course it had to be attached to something. The defendant actually told me it was attached to the leg of the table, the council table. But it would have to be a leg of the council table or to a belt. It has to be attached to something so he can't get away. His legs were shackled and his left arm is actually shackled. But there was nothing sad before the bench trial started or during the bench trial about the uniform, which is a distinctive jail uniform, a black and white striped one as opposed to a plain colored one like this. Well, do they have different styles in that particular county? I mean, we're talking about a county and a judge who sits in that county on a regular basis. Well, I actually know because I've talked to the public defender. That is the style of jail uniform that they used in Lee County at the time in 2010 and apparently still use now because I talked to him. So who should have, if he wanted to wear something else, whose responsibility was it for him to have those other items of clothing? Either he has to ask or his defense counsel had to ask or the judge should have responded and not held the trial, one of the three. Well, I guess the point is if this is the style of jail garb that they wore then and wear now and they don't have different levels to show who might be a trustee or who might be just, you know, one of the inmates, how does this distinguish him if the judge sees this day in and day out? It's because of the Supreme Court rules and also because of the cases. People versus booths itself, you're supposed to have a booth hearing on security. This is a security device, a black and white striped uniform. I mean, obviously it is because that isn't an ordinary outfit that makes you be presumed to be innocent because it's a distinctive jail outfit and makes you look guilty. But he's in jail. I mean, it's not like he's out on the street and they put him in it when he came in. No, but that isn't it. The point is whether it's a trial and that's distinguished. One thing, it would be terrible in a jury trial.  But whether it's tried in front of a bench, yes, he shouldn't be tried in front of a bench because people versus booths, which you're supposed to have a booth hearing on whether he should be tried in the shackles. Booths actually says shackles or jail attire. They call it prison attire, but in county court it's jail attire unless you come directly from the prison. Okay, so that is significant. And so he was supposed to have a booth hearing. Booths itself says that this should be sua sponte. And what happened in court, there was nothing about the jail uniform. Now, the defendant did wave the leg shackles, and I'll tell you why he did. And you'll see that he did not wave the arm shackle. Right before the trial, the following exchange occurred concerning the shackles. Mr. Thompson, the defendant's attorney, incidentally, Mr. Thompson was a public defender. Further, Judge, I'm requesting that the defendant, in order to participate meaningfully in the trial, be allowed to have his hand shackles removed, which means both hands. He can keep his feet shackles on, and that I be permitted to hand him the pen. So as you can see, he asked for both of them, but he did wave the feet shackles. He did. That's invited error. The court, Mr. Bailiff, the bailiff, I did talk to Mr. Thompson earlier, and he requested, I don't have a problem if we free one hand. The court, we will allow that to occur in that fashion. Go ahead and take whatever time you need to get that accomplished. Are there going to be any opening statements? And so the public defender who represented the defendant did wave the feet shackles because he said, I will allow the feet shackles to remain. But he did not wave the left-hand shackle that did remain. He was shackled to the counsel table. Okay? And there's nothing said about the leg shackles. Well, not the leg shackles, the uniform. Now, People v. Booze talks about it. I'm sorry. I'm sorry. The judge knows that the defendant's in jail with leg shackles on, and then to take the position that he's treacherous because he's got an arm bracelet on? Yes, well, maybe you're picking on this, but it's important because it's a violation of Supreme Court Rule 430. This is a new Supreme Court rule, Judge, and it went into effect. It's a convocation of Booze and Staley. Booze is really only for jury trials. But Staley says that the same rule applies to bench trials. So I'm not being picky. It's what the law of the state of Illinois is. And it's Supreme Court Rule 430. What's the purpose of the statute or the rule? So the defendant wouldn't look prejudicial as he sits there. I think you need to read Supreme Court Rule 430 to realize what the Supreme Court rule is. Part of the purpose is look one. Yeah. Whether it's a bench trial or a jury trial, there's an effect on the presumption of innocence. No, that distinction isn't there anymore. And I want to read you Supreme Court Rule 430 because I didn't put it in my brief. It went into effect one month before this trial, and it codifies Booze and Staley, and it gets right to that point. Okay. An accused shall not be placed in restraint of any form unless there is a manifest need for restraint to protect the security of the court. The proceeding ought to present escape. People charged with a criminal offense are presumed innocent until they're proven guilty and are entitled to participate in their defense as free persons before the jury or bench. So you can see that distinction. That's what I said. Yeah. It doesn't matter. Okay. Because I'm well aware that I never tried a person in handcuffs, but I certainly didn't in jail uniforms, okay? Okay. And it also says in the end that this has to be a sui sponte hearing. So the little bit of conversation that Mr. Thompson, the public defender, had with the judge in this court is not a hearing. Because a hearing, you're supposed to have all sorts of, you're supposed to make findings, and it's sui sponte. And once the trial judge becomes aware of the restraints, which he is, because he knows about them because of the conversation, you can see the jail uniform, he shall not, he or she shall conduct a separate hearing on the record to investigate the need for such restraints. So it's a sui sponte hearing, and that wasn't done in this case. And it's codified under Supreme Court Rule 430, which went into effect one month before this. And it's really a complication of Booz and Staley. Okay. And, Judge, the reason we know of this is not a security risk. To me, this is very unusual. After the trial judge found him guilty of this domestic battery and the prior, it was right down at the trial, so it made it a Class 4 felony. He did not revoke the defendant's bond. You know what the bond was? It was $3,000. In the Supreme Court rule, it goes on to say that once the trial judge becomes aware of the restraints prior to allowing the defendant to appear before the jury, he or she … If you read the whole paragraph, the reason I didn't read that, it makes it more confusing. But it really is just telling the time that they don't want the jury to see it. But it really applies to the whole paragraph. That's your reading of it. Yeah, that is my reading of it. It's interesting that you point this out as a Supreme Court rule using the word shall. It also did that with respect to a whole line of cases regarding voir dire and that the court was to ask prospective jurors, do you understand the presumption of innocence, et cetera, et cetera. You recall those. Right. And the Supreme Court said, you know, even when the trial court absolutely on all fours fails to do that, no harm, no foul. Why shouldn't we follow that line of analogy with respect to this rule? Well, of course you could. That's what the answer to that is. Well, that's what the Supreme Court said. Yeah. But Booz says that you're supposed to have this hearing and that's a normal Supreme Court case. And that has not changed. Okay. Booz and Staley, which is the one that applies Booz to bench trials. Okay. So, therefore, because this is based upon Booz and Staley, I'd say the Supreme Court rule is mandatory just like the cases are. That's the reason why, I mean, if you want to have an analogy. If we're going to apply this rule, and that is obviously one of the things being asked here, it's talking about restraints. How does a jail guard constitute a restraint? It is a type of restraint. You can't go freely out in public and you don't look innocent. It says, appears a free man. If you look at where it talks about restraints, it actually has free man. I've watched a lot of the kids get off the buses at my son's school, and they don't look free to me, but that's another story. Okay. But that would be the argument for the jail uniform. Obviously, the strongest argument is being tried in a handcuff. Okay. And just for the U.S. Supreme Court, in Illinois v. Allen, actually talks about a person being shackled and gagged. Well, this is shackled and gagged. It talks about the technique itself is something of an affront to the very dignity and decorum of the judicial proceeding. And so this is what we're talking about. The decorum of the judicial proceeding is important. Some people say it's a violation of due process in the 14th Amendment. And then in this particular case, the public defender, of course, did not object to this because it was part of it. And he also did no post-trial motion at all, either the oral or a written post-trial motion, yet he filed a notice of appeal. And ordinarily, that would be forfeited. But under the plain air doctrine, I'm reading People v. Heron. This is the Illinois Supreme Court. The plain air doctrine bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved air either when the evidence is close, regardless of the seriousness of the air. The evidence is close, and that's what I'm saying, it's close in this case, regardless of the seriousness. So, Judge, if you're going back to thinking how serious this is, it's regardless of the seriousness. And so, therefore, this air alone, when it's already closely balanced, okay, and this air alone could cause it to tip against the defendant. And if you look at what the evidence in the case, that may have happened in this case. Judge, don't we also assume in a bench trial that the trial judge considers only relevant material evidence, which would, of course, exclude the fact that he's handcuffed or he's wearing jail guard? We always have presumed that, but I don't think so because People v. Staley specifically says that we apply the Booze Rule to bench trials. And so, therefore, when the Supreme Court was saying that, they felt that they should rule more in favor of the defendant in the presumption of innocence and not consider that the judge doesn't consider that. Right, and I agree with you that it would be error, then, to not conduct this. But where's the prejudicial error? Under People v. Herron, you don't need the prejudicial error. It's actually presumed to be prejudicial. Because of the unbalanced or the closely balanced evidence that you're hanging in your hands? Sure, that is the one that I'm doing. The reason I'm not doing the second part is exactly because of that, because I have a very high burden of proof on the second one. And I don't have this under the cases. And I even cited three cases in my first brief where they didn't presume this to be real serious error. So if you really want to know, that's why I went on the first one. The second one, the second problem is error is so serious regardless of the closeness of the evidence. You can either be closely balanced regardless of the seriousness of the error, and it's presumed, or the error is so serious, it's not so serious. And it's probably because of exactly what you're saying, that judges have historically presumed to disregard things that, well, it doesn't look like a free man is sitting there. Okay? So I think you might want to know what happened after I wrote the brief. And using, I didn't actually use People v. Herron, but that is the general rule. And the reason I'm using People v. Herron now, it was actually cited by my opponent's case. But the reason why is the case came down right after I wrote the first brief, but I addressed it in my reply brief because the state brought it up. It had just come down. It was People v. White. And this is the case that says we have the burden of showing prejudice, even in a closely balanced case. Okay? So they actually changed. When you read People v. White, and this is how I read it, it looked like we had to show, the defense has to show some prejudice. They say it's somewhat, but for the evidence this would have happened, it's like ineffective assistance of counsel. In fact, they even talk about how it's similar to ineffective assistance of counsel. So People v. White looked like it changed the Herron rule where I don't have to show prejudice. It's just, it's air, it's closely balanced. I get to have the case reversed for a man because it's presumed to be prejudice. Okay. So then the question became is did People v. White change the rule? Do I have to show the prejudice? Well, it happened that the third district, I think, came down with a very wise decision called People v. Vesey. And they analyzed White. And then I went back and analyzed White. And what People v. Vesey said, that that was actually dicta, this about the prejudice, because it wasn't closely balanced. And they also have a footnote saying the court was able to, or they say if the Supreme Court intended to overrule the traditional plain air announced in Herron, we would expect it to acknowledge that it was doing so, particularly considering that it cited Herron when it defined the scope of the prejudice requirement of the plain air cases. And so, do you want me to continue on this? No, I don't. Not right now. You'll have a chance to reply. Okay. I will. Thank you. Of course, we're asking the court to be reversed and remanded. Good morning, Your Honors. Counsel Victoria Joseph for the people of the state of Illinois. May it please the court. People first want to address the issue of prison attire in this case, saying that there is no error when this was a bench trial. The defendant has cited no authority, showing that there is a prejudicial effect of wearing prison attire in a bench trial. In their reply brief on page three, they try to say that Staley did hold so. However, Staley was only held that the restraints were offensive in bench trials as well. The citation in Staley was to the American Bar Association standards for trials before a jury, in which they cited that prison attire and unnecessary physical restraint are offensive even when there is no jury. However, the holding of the Supreme Court did not adopt the part of the ABA standard for trial by jury in the bench trial. So the people assert that there was no error in regard to the defendant's prison attire in this case. What's the difference between the prison or the jail attire, which is distinctive? I mean, you know, the orange or the green or the blue is maybe easier on the eyes. The black and white stripe is a little unusual. But what's the difference between having a jail log that says, you know, defendants in custody or the people not in custody walk through this door and the jail personnel walk through this door or the people in jail walk through this door no matter how they're dressed? I mean, what's the difference? Or is there a difference between that other information and the outfit? If the issue is the trial judge shouldn't know or should not be prejudiced by it, what's different with the outfit? Honestly, the people don't know, Your Honor, because having as many of you have been trial judges yourself, most of the time, as I've seen it when I visited the trial court, is even when the defendants brought up for a motion, he or she would have been in the prison attire. So there would have already been that established pretrial as well. So as the people say, there is no error in regard to the prison attire in this case. As far as the shackles, the people stand by the brief saying this was invited error. Counsel read the exact transcript, the exact language from the transcript, the recorded proceedings, and admitted that there was the invited errors to leg shackling. As to the left hand, while counsel asked to have the hand shackles removed, the bailiff announced that the attorney had discussed it with him. There was no further discussion. And after they said, we don't have a problem with one hand, and that's, as far as the people are concerned, acquiescence to the procedure that was used. Once the request was made, they made no further inquiry into the trial court's burden to proceed with the hearing under the rule. It was the trial court's burden. However, the defendant request made a request, and he was given the he was given the result of his request. He asked for both and got one. Assuming for the just for the sake of argument, we move on to the plain error analysis, what's your position? The people stand by the brief and say this was not error under the second prong and that the discrepancies were resolved by the trial judge in finding believability of the testimony as to the striking of the victim and therefore is not closely balanced. So that's your position. It is. This is not closely balanced. That is the people's position. Your Honor. Well, when a judge says things like what did you say? Concerned. He says some specific things about the evidence. Are we to disregard that? Let's see. He has serious concerns about the accuracy of the memory discrepancies, and he comes to the conclusion. I can still believe that. In fact, his testimony was believable beyond a reasonable doubt. So maybe it would be better. The trial judges didn't talk about all the other things. You just came to the conclusion with that. That might be easier for you. It would always be easier, Your Honor. But in this case, he was able to weigh through. And additionally, I think looking back at the additional evidence of the defendant's behavior and how the other people saw the defendant behaving, it is also a reasonable inference that a random bystander would not be holding the defendant back if the woman simply fell. This is the law that if it's a question of credibility relative to one witness, then there's no other evidence to support the testimony of that witness that the evidence is closely balanced. If there's some reason to suspect the credibility, and there is some reason to suspect the credibility in our case, because Von Schacht at trial could not remember any of the facts, could not remember that there was a punch, admitted drinking, and pretty much had no memory of what happened. I am not aware specifically of a case, but I will look into it when I get back to the office today. Any other questions? No. Any final remarks? Just that this was an invited error and the prison guard was not an error at all under a bench trial. Thank you, Your Honor. Yes. I'd like to address the distinctiveness of this jail uniform. This isn't a orange jumpsuit, which looks like a construction worker, okay? But we know he's not a construction worker. I mean, we know he's coming up from the jail. If this has been the uniform that they wear all the time, we know where he's coming from. He's not coming from church. He's coming from downstairs. Well, I'm not going to belabor the point, but I do think it makes a difference because it looks more guilty, and it is the trial. And Supreme Court rule talks about how this handcuff thing doesn't occur before the trial. They go through motions and everything else. You can still have the handcuffs on, actually. That's what it says. But they distinguish the bench from jury trial. So, therefore, I think it's the fact that it's the trial is what's important there. And you know he's not a security risk. I was just saying that at the very end because the judge didn't revoke his bond, although he found him guilty of a Class 4 felony. And he knew he had a prior because, remember, this is a domestic battery with a prior. The defendant actually had a bunch of priors. But he knows he's just found him guilty of a Class 4 felony, and he does not revoke the bail. And the bail required only $300 in cash. But isn't it also true that this guy's been sitting in jail for weeks and weeks and weeks and weeks because he couldn't come up with $300? Even after the judge reduced the bond. Probably not. Yeah, probably not. But it had been weeks and weeks. It was two and a half months. Is it your position that if you have just had jail time, no cuffs, no shackles, plate shackles, that you must satisfy the post? I probably wouldn't argue that, Judge, if you really want to know the truth. It's the combination. No. The jail guard alone would be a very weak case for the defendant. It's the hand shackle that's really what it is. That really is what comes down. With respect to the leg shackles, when the defendant waves, doesn't that pretty much fall into invited error? The leg? Yeah, it does. It does. Absolutely. There is a whole lot of cases on that. So the leg shackles was invited. And the only other thing left is the one wrist cuff. Yes, that's right. But you have a combination of a jail uniform. You have a combination of a hand shackle. And the judge was aware of the leg shackles, but the public defender invited that error. And quite frankly, he probably wasn't even able to see the leg shackles under the table, if you really think about it. Don't the cases talk about one with respect to plain error? One aspect, one analysis is the presumptive purpose of it. The presumption of innocence? Yes. Protecting the presumption of innocence. No, I think it's a due process thing. Fourteenth Amendment due process violation is what it is. Your presumption of innocence thing. The U.S. Supreme Court talks about the person has a right to be tried in a dignified manner, and that's not a dignified manner. The black and white striped uniform isn't very dignified. Well, the case talked about presumption of innocence on the purposes of making sure that the defendant doesn't have jail garb or cuffs, et cetera. The other one is to assist the attorney. What do you call it? Assist the attorney. Not being handcuffed. Oh, oh. So you can assist your attorney. He lied. It might include shackles if you have to walk someplace. Yeah. But with respect to the facts of our case, the leg shackles, you have the invited error and waiver by the attorney. Sure. With respect to the handcuff, the court recognized that you had to assist the attorney by taking notes or sending notes to the attorney. So he took the position, removed one cuff. That's right, Judge. And then the other element was the prison guard. And the left hand. Left hand still. And the cuff, so. Remember, he can't get up when he's hooked to a table. You know, he can only go so far. But, no, did it affect the defense attorney from trying the case? Probably not. Hold on just a second. You've told us that the cuff, the left cuff was remained on his hand, so the right cuff was hooked to the table. No, no, no, no. Left cuff remained on the hand. It was hooked to something. And if you know in a courtroom, it's got to be either to a leg of table or to something. That's my point. What does the record say? Not what you suspect or what you suppose. No, the record is silent. It just says his left handcuff is still on, but you don't just have a cuff dangling in the air. How do we know that? I mean, respectfully, how do we know that? If it's not in the record, no one made a record on it, he could simply have allowed his hand to be free so he could write. No, no, no, it's the other hand. His right hand is free for writing. Correct. How do you know, so we assume, and I think a reasonable assumption, a cuff remains on the other hand. It does. How do you know, based on this record, that the unlocked cuff, if you will, is then attached to something such that he cannot move his left hand? Or did you suppose that? Well, of course I supposed that. Okay, that's my question. Is there anything in the record that says he shackled to his belt, he shackled to, or even that he was wearing a belt? We don't know he's wearing a belt. I know what you mean, Judge. So my question is, is there a difference to be drawn based on this record that in fact, although he had a cuff on his hand, both of his hands were free from encumberment and therefore not restrained? Why would I make the big deal about the bailiff? I talked to Mr. Thompson earlier, I don't have a problem if we free one hand. I mean, I think that's presuming the other hand isn't free. And the judge says we will allow that to occur in that fashion, which means that the other one's got to still be attached. To the cuff. Well, you don't have a cuff just dangling in the air. We also reduced his bond to $300. No, no, he didn't use it at the trial. He reduced it previously. The first time the public defender appeared in court, it was $5,000. My point is that you don't know and you can't point to any evidence in this record that the trial court allowed his other hand to be tethered other than to have the cuff remain on it. Is that correct? It's not in the record, but it's presumed because of not only the statements. The question is, can you point to anything in the record that indicates that his other hand was tethered other than what you've already said, which doesn't say his hand was tethered. You can read it again. No, I don't have anything else in the record. Okay. Remember, he also didn't testify, so we don't have anything about him getting up and down to go to the witness stand. Sure, I don't have anything. Another question is I noticed both of you have used the word shackle and shackles interchangeably. What is a shackle and what is a shackles? I'm not sure. Me neither. Okay. Do you have any other questions? No. Any final remarks? Yes, I'd like to talk a little bit about People v. White, the third district. Because People v. Vesey is the third district case that analyzes White very clearly because I know this court has come down and has followed White. So I think it's important that you be familiar with Vesey, which says if the court meant in the same sentence to overrule People v. Heron, they would have said so. And that's true.  And sure enough, and I also read the cases that White was based upon, and there really is People v. Heron. And Heron has the rule that we don't have to show prejudice. It's presumed when it's closely balanced. It's also dicta because White and also there's a case that was decided last Friday by the Illinois Supreme Court called People v. Allen. It's just like White. It just came down last Friday. It's just like White. And in both of those cases, and, okay, when you read White, when I re-read it with Vesey in the third district case in mind, I could see that they were talking about prejudice. The reason they were talking about prejudice, they said the defendant couldn't show prejudice because it wasn't closely balanced. So it's not only dicta, but that is what the prejudice is. You can't show it because it's not closely balanced. They aren't answering the question, do you need to show prejudice when it is balanced? And so then your position is that the evidence is closely balanced based on the remarks of the trial judge as he's sort of talking his way through the findings? Basically, yes, but also when you really look at the evidence, the police officer says he doesn't see any marks on the woman's face when he takes her home, and he's just supposedly been punched with a cocktail, you know, so the marks are there. The way they found him guilty of the domestic battery is because they came up with some Supreme Court cases which I didn't argue that because they appeared to be correct. The woman was moaning, so they didn't have injury, but they said because she was moaning, you can presume an injury. Okay, there wasn't actually an injury proven by the state. And I have that somewhere in the brief, the name of those two Supreme Court cases on that point. So that's why you have the domestic battery. It's not because of injuries. It's because she was moaning on the ground, and that's undisputed by a number of the witnesses. So therefore, I'm saying that you should follow the regular rule that's been around for a long time on plain air. It is if something is closely balanced, which I believe is in this case not only by the judge's comments but by the evidence itself, it doesn't match. Oh, incidentally, the one eyewitness says he'd been there since 8 o'clock, couldn't remember how many bars he'd been in, and he only has four bud lights. It's 1.20 in the morning. He's a young man who's a paramedic, incidentally. Anyway, the evidence is closely balanced, and we do have error. I think that's clear, especially when you look at the new Supreme Court rule that went into effect one month before 4.30, and the cases say it should be reversed and remanded. Thank you very much. All right, we will adjourn.